IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MAJEED ASSAR,                           )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )    1:10CV647
                                        )
CAROLYN W. COLVIN,[1]                   )
Acting Commissioner of Social Security, )
                                        )
            Defendant.                  )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Majeed Assar ("Plaintiff") brought this action pursuant to Sections 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff filed his applications for Disability Insurance Benefits on December 13, 2006 alleging a disability onset date of October 8, 1998. (Tr. at 56, 128-35.)[2] His application was

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #7].

denied initially (Tr. at 56, 63-67) and upon reconsideration (Tr. at 57). Thereafter, he requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 78-79.) Present at the hearing, held on April 7, 2009, were Plaintiff, his attorney, an impartial medical advisor, and a vocational expert ("VE"). (Tr. at 14.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 21) and, on July 16, 2010, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-8).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2003.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 8, 1998 through his date last insured of June 30, 2003 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: osteoarthritis of the knees; degenerative disc disease; and bilateral carpal tunnel syndrome (20 CFR 404.1520(c)).
> . . . .
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with postural restrictions.

(Tr. at 16-17.)

The ALJ then considered the VE's testimony regarding the above residual functional capacity ("RFC") and determined that Plaintiff was able to perform his past relevant work as a pizza cook. Plaintiff therefore was not under a "disability," as defined in the Act, from his alleged onset date through the date last insured. (Tr. at 21.)

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1993) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. He therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from three severe impairments: osteoarthritis of the knees, degenerative disc disease, and bilateral carpal tunnel syndrome. (Tr. at 16.) The ALJ found at step three that none of these impairments met or equaled a disability listing. Accordingly, the ALJ assessed Plaintiff's RFC and determined that he only could perform light work with further postural limitations. Because Plaintiff's past relevant work as a pizza cook "did not require the performance of work-related activities precluded by" his RFC, the ALJ found that Plaintiff could return to his past relevant work under step four of the analysis and therefore was not disabled. (Tr. at 21.)

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

Plaintiff argues that substantial evidence fails to support the Commissioner's findings. Specifically, he challenges the ALJ's credibility determination, contending that the "ALJ's reasons for rejecting [Plaintiff's] pain testimony were false" and stemmed from a misapplication of Craig v. Chater, 76 F.3d 585. (Pl.'s Br. [Doc. #11] at 7.) Plaintiff also claims that the ALJ erred by failing to include depression as a severe impairment at step two. (Pl.'s Br. at 11.) Defendant contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled. (Def.'s Br. [Doc. #14] at 12.)

A. Credibility

Plaintiff first challenges the ALJ's finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. In particular, Plaintiff contends that the ALJ failed to properly assess his pain allegations under the framework set out in Craig, 76 F.3d at 594-95. The Fourth Circuit in Craig provided a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. § 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about his pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Craig, 76 F.3d at 596.

7

Notably, while the ALJ must consider Plaintiff's statements and other subjective evidence at step two, he need not credit them "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Id. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit his ability to perform basic work activities. Thus, a plaintiff's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities [only] to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

> (i) [Plaintiff's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [his] pain or other symptoms;
>
> (v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [his] pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use[s] or [has] used to relieve [his] pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed his demeanor, the ALJ's credibility determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (7th Cir. 1984).

In the present case, Plaintiff alleged pain as a result of his documented osteoarthritis, degenerative disc disease, and carpal tunnel syndrome, and the ALJ determined at step one of the Craig analysis that these conditions "could reasonably be expected to produce [his] alleged symptoms." (Tr. at 20.) However, the ALJ found at step two that substantial evidence failed to support the intensity and persistence of the pain alleged by Plaintiff or the extent to which his pain limited his ability to work. Therefore, the ALJ ultimately concluded that Plaintiff's pain, although severe, was not disabling.

Plaintiff argues that the ALJ's rejection of his pain testimony was inconsistent with his finding at step one. He notes that, because the ALJ found that he "passed" step one of the two-step analysis required by Craig, 76 F.3d 585, "[a]s a matter of law . . . [the ALJ] found that *objectively*, [Plaintiff] had a medical condition that could be expected to produce pain *in the amount and degree* that [Plaintiff] alleged." (Pl.'s Br. at 7.) Accordingly, Plaintiff contends that the ALJ "did not give his testimony the credit it deserved simply by virtue of his having passed Step One." (Pl.'s Br. at 10.)

In considering these contentions, the Court notes that step one of the Craig analysis requires Plaintiff to make a "threshold . . . showing by objective medical evidence of the existence of a medical impairment 'which could reasonably be expected to produce' the actual

9

pain, in the amount and degree, alleged by the claimant." 76 F.3d at 594 (quoting 20 C.F.R. §§ 404.1529 and 416.929). As further explained in Craig,

> [t]his threshold test does not, as the regulation is careful to emphasize, entail a determination of the "intensity, persistence, or functionally limiting effects" of the claimant's asserted pain. See 20 C.F.R. §§ 416.929(b) & 404.1529(b). At this stage of the inquiry, the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment—a statutory requirement for entitlement to benefits, see 42 U.S.C. § 1382c(a)(3)(A)—which could reasonably be expected to be the cause of the disabling pain asserted by the claimant.
> . . . .
>
> It is only after a claimant has met [his] threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work, must be evaluated. See 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1).

76 F.3d at 595. In other words, Plaintiff must show evidence of an impairment *capable* of producing pain in the amount and degree he alleges to pass step one of the Craig analysis. Whether his impairment actually produces that amount and degree of pain, along with the effect of that pain on the Plaintiff's ability to work, falls under step two and must be further evaluated based on all of the relevant factors. See 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). In applying this Craig analysis, the Fourth Circuit has subsequently explained that

> Craig does not create or recognize a great weight rule affording the claimant a presumption of credibility at step two of the pain analysis based on a successful showing at step one. Craig notes that step one of the pain analysis is focused solely "on establishing a determinable underlying impairment—a statutory requirement for entitlement to benefits." 76 F.3d at 594. Craig explains that, after the claimant crosses this threshold, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." Id. at 595. The claimant's own statements regarding her pain are not afforded any presumption; rather, "[u]nder the regulations, this evaluation [of the claimant's pain] must take into account not only the claimant's statements about

her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings." Id. (internal quotation marks omitted).

Smith v. Astrue, 457 F. App'x 326 (4th Cir. 2011) (unpublished); see also Felton-Miller v. Astrue, 459 F. App'x 226 (4th Cir. 2011) ("[C]laimant's own statements regarding her pain are not afforded any presumption; rather, '[u]nder the regulations, ... evaluation [of the claimant's pain] must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings'").

In this case, the ALJ determined that Plaintiff's osteoarthritis of the knees, degenerative disc disease, and carpal tunnel syndrome were all severe impairments during the period at issue in that they caused significant limitations in his ability to perform basic work activities. However, he also found that the degree of pain and limitation alleged by Plaintiff was partially inconsistent with the objective medical evidence and other evidence, including the factors set out in 20 C.F.R. § 404.1529(c)(3). He noted, for example, that through the date last insured, June 30, 2003, Plaintiff "was primarily symptomatic in just the left knee," and that synvisc injections and physical therapy provided at least some relief from his symptoms. (Tr. at 18, 20.) It was not until May 2004, nearly a year after the expiration of his insured status, that the progressive arthritis in Plaintiff's left knee became "end stage," necessitating a total knee replacement later that year. (Tr. at 255, 261.) Significantly, at that time, Plaintiff's orthopedist, Dr. Murphy, noted that Plaintiff's right knee was becoming "more symptomatic from degenerative arthritis . . . but it's not reached a point to consider replacement," a fact which

11

undercuts Plaintiff's hearing testimony that he postponed his knee surgeries for purely monetary reasons. (Tr. at 36-37, 261; Pl.'s Br. at 9.)

As for Plaintiff's back impairment, the medical records demonstrate that, following a workplace accident in 1998, he developed chronic low back pain due to degenerative disc disease. Throughout the insured period, Plaintiff's condition remained stable, with no clinical signs of nerve root compression, normal reflex, motor, and sensory findings, and negative straight leg testing.[6] (Tr. at 18-20.) Plaintiff's neurologist, Dr. Elsner, consistently recommended conservative treatment involving pain management and no surgery. (See Tr. at 288, 290, 292.) He rated Plaintiff's permanent partial disability at 8%, a finding which did not change subsequent to a new MRI in 2004. (Id.)

After reviewing the above evidence, the non-examining State agency medical consultants "found that, through the date last insured, [Plaintiff] could perform the exertional demands of light work with postural restrictions." (Tr. at 20, 302-10.) The ALJ found the consultants' assessments consistent with the medical record for that period and gave them great weight. (Tr. at 20.) He also noted that "the medical evidence pertaining to the period through June 30, 2003

---

[6] Plaintiff contends that the ALJ failed to mention evidence demonstrating the existence of nerve root compression and a positive straight leg raise test. (Pl.'s Br. at 7.) Specifically, Plaintiff contends first that the ALJ failed to consider a December 2003 re-reading of his 1998 MRI stating that his disc protrusion was "encroaching on the left nerve root." However, the ALJ did consider the 1998 MRI, as well as a subsequent 2004 MRI. The ALJ also reviewed the December 2003 treatment note, which included a negative straight leg raising test and normal reflex, motor, and sensory findings. (Tr. 19, 264.) The ALJ attributes this examination to Dr. Murphy, but the only such examination and testing in December 2003 reflected in the record appears to have been by Dr. Murphy's colleague, Dr. Hilts, and also included the review of the 1998 MRI cited by Plaintiff. Thus, all of this evidence was reviewed by the ALJ, and the purported re-reading of the 1998 MRI does not undermine the ALJ's determination. Plaintiff also contends that he had a positive straight leg raise test in 1999. However, the 1999 treatment notes cited by Plaintiff were also specifically considered by the ALJ, along with multiple other treatment notes noting negative straight leg raising. (Tr. at 18-19, 294.) Ultimately, Plaintiff has not established errors in the ALJ's analysis, and any alleged errors fail, in any event, to undermine the ALJ's overall credibility determination.

does not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process." Given all of the above factors, he concluded that "the claimant's allegations of functional restrictions are not fully credible as they pertain to the period at issue." (Tr. at 20.) Plaintiff does not point to any other evidence endorsing or supporting his subjective complaints of disabling pain, and the Court finds that substantial evidence supports the ALJ's credibility determination.

B.   Depression

Plaintiff next argues that the ALJ failed to properly consider evidence of Plaintiff's depression or consider its exacerbating effect on his back pain. However, as Defendant correctly notes, there is no evidence that Plaintiff suffered from clinical depression during the insured period. See Moore v. Astrue, 572 F.3d 520, 522 (8th Cir. 2009) (holding that a claimant must establish that disability existed prior to the expiration of her insured status). The ALJ's decision instead reflects that Plaintiff was diagnosed with depression in December 2003, six months after the expiration of his insured status. (Tr. at 20.) Moreover, the decision notes that, as of Plaintiff's hearing, he had not had any treatment by a mental health care professional. (Tr. at 20.) The sole reference to Plaintiff's mental status within the insured period consists of a treatment note by Dr. Elsner, who opined in September 1999 that "emotional stressors" in Plaintiff's life might be "aggravating" the "chronic debilitating pain that he seems to experience." (Tr. at 293.) Nonetheless, as noted above, Dr. Elsner rated Plaintiff's permanent partial

13

impairment at 8%, indicating that Plaintiff's pain, even aggravated by his mental status, did not prove disabling. In short, the substantial evidence in this case supports the ALJ's treatment of Plaintiff's depression.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #10] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #13] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 6th day of February, 2015.

/s/ Joi Elizabeth Peake<br>United States Magistrate Judge